UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN BRODERICK, individually and
on behalf of all others similarly situated,

    Plaintiff,

v.

CASE NO. 1:08-CV-813

119TCbay, LLC, d/b/a Baymont Inn & Suites,

HON. ROBERT J. JONKER

    Defendant, Cross-Plaintiff and
    Third-Party Plaintiff,

and

BAYMONT FRANCHISE SYSTEMS, INC.
and WYNDHAM HOTEL GROUP, LLC,

    Defendants, Cross-Defendants,
    Third Party Plaintiffs and
    Third-Party Counter-Defendants,

and

SOFTHOTEL, INC.,

    Third-Party Defendant and
    Third-Party Counter-Plaintiff.

_____/

## OPINION

Plaintiff John Broderick alleges Defendants 119TCbay, Baymont Franchise Systems, and Wyndham Hotel Group violated the Fair and Accurate Credit Transactions Act ("FACTA") by providing to him a printed credit card receipt that revealed the first digit of his credit card number. (First Amended Complaint, docket # 13.) Plaintiff seeks statutory and punitive damages for himself

and a nationwide class of all other persons similarly situated.[1]  (*Id.*, at ¶ 5.)  The three named defendants and third-party defendant SoftHotel, Inc. (collectively "Defendants") move for summary judgment. (Docket # 60).  The Court held a hearing to address this motion on August 24, 2009.

**BACKGROUND**

This litigation raises the potential of class-wide liability for Defendants based on a check-out receipt provided to Mr. Broderick following his stay at a hotel owned and operated by Defendant 119TCbay in Traverse City, Michigan.  As one would expect, the receipt included all information relevant to Mr. Broderick's hotel stay, including his method of payment for the hotel room. (*See* Defs.' Br. in Supp., docket # 61, Exhibit A.)  The receipt indicates Mr. Broderick paid for the room by credit card, specifically a MasterCard.  The receipt reveals Broderick's use of a MasterCard by listing the abbreviation "MC," and also by printing the full brand name, "MASTER CARD." All parties in this case, including Plaintiff, agree that the printed receipt may lawfully contain this information, including, specifically, the full brand name of Plaintiff's credit card.[2]

The receipt also identifies Plaintiff's use of a MasterCard in one other way: namely, by revealing that the first digit of his credit card number is a "5."  This is true for every MasterCard in

---

[1] Statutory damages include actual compensatory damages.  But even a plaintiff that suffers no actual damages is entitled to an award of $100 to $1,000 for each willful violation FACTA.  15 U.S.C. § 1681n.  Accordingly, a putative nationwide class action could potentially result in millions of dollars in statutory damage awards, even in the absence of any actual damages.

[2] The only information from Defendants' experts upon which the Court is relying are the facts recited in this paragraph.  All parties had the opportunity, as discussed during the Court's Rule 16 conference, to develop a record on these points.  Plaintiff does not contest these particular points, as presented by Defendants' experts, but Plaintiff did move to strike the expert affidavits (docket # 52), presumably because the affidavits also address other matters.  Because the Court is not relying on any expert information beyond the undisputed facts in this paragraph, Plaintiff's motion to strike is dismissed as moot.

circulation. (Defs.' Br. in Supp., docket # 61, Exhibit B, McCarthy Decl. at ¶ 7; *id.*, Exhibit C, Dailey Aff. at ¶¶ 6-7.) The first digit of every MasterCard is the same because the first digit of any credit card number, regardless of brand, is by definition the numeric representation of the brand identity of the card. (*Id.*) The first digit of every American Express card is three; the first digit of every Visa card is four; the first digit of every MasterCard, including Mr. Broderick's MasterCard, is five; and the first digit of every Discover card is six. (*Id.*) There is no dispute amongst the parties about the content of the information on Plaintiff's receipt or about the fact that the first digit of every credit card is the numerical designation of the brand of the credit card.

Plaintiff's putative class action lawsuit alleges Defendants violated the Fair and Accurate Credit Transaction Act ("FACTA"), 15 U.S.C. § 1681c(g)(1), by printing the first digit of his credit card number on the check-out receipt.[3] (Amended Complaint, docket # 13, at ¶¶ 31, 44, 57.) On this record, all parties agree that the first digit of any credit card number is just a numeric representation of the name of the card brand, and that merchants may lawfully print in word form the brand name on credit card receipts. Accordingly, the issue in this case is whether FACTA should be construed to impose potential class wide liability for printing in numeric form what all parties agree may be printed in word form without any liability at all. Defendants moved for summary judgment on this issue (docket # 60), and Plaintiff has filed a response in opposition (docket # 63). All parties agree this is an issue of first impression.[4]

---

[3] The receipt also revealed the last four digits of the card number. Each digit between the first and last four was masked by an "X" in place of the actual number. Plaintiff does not allege any FACTA violation based on Defendants' printing of the last four digits of his credit card number.

[4] There has been a plethora of FACTA litigation in the federal courts, but the parties do not cite, and the Court is unaware of, any case addressing the specific legal issue raised here.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Jones v. Potter*, 488 F.3d 397, 402 (6th Cir.2007); FED. R. CIV. P. 56. In considering a motion for summary judgment, the Court must draw all reasonable factual inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The ultimate question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

**ANALYSIS**

Congress itself said that it enacted the Fair and Accurate Credit Transaction Act of 2003 to "prevent identity theft, improve resolution of consumer disputes, improve the accuracy of consumer records, make improvements in the use of and access to, credit information, and for other purposes." Pub. Law. No. 108-159, 117 Stat. 1952, 1959-60 (2003). Congress provided one means of accomplishing these goals in Section 113 of FACTA, entitled "Truncation of Credit Card and Debit Card Account Numbers":

> Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.

*Id.*; 15 U.S.C. § 1681c(g)(1). The basic dispute between the parties in this case is about how to interpret Section 113's command that "no person . . . shall print more than the last 5 digits of the card number or the expiration date. . . . " Defendants argue FACTA does not prohibit printing the first digit of a credit card number because the first digit reveals in numeric form nothing more than what

4

already lawfully appears in word form on the face of the receipt: namely, the brand name of the credit card used. The first digit of any credit card number merely identifies the issuing brand of the card, something the credit card industry lawfully and routinely does in words on virtually every receipt. (McCarthy Decl. at ¶ 11: Dailey Aff. at ¶ 7.) FACTA does not prohibit printing "MasterCard" on a receipt, so, according to Defendants, it should not be read to prohibit printing that same information in numeric form. Plaintiff does not dispute Defendants' factual assertions regarding the function of the first digit, or the lawfulness of printing the brand identity in word form. But Plaintiff nevertheless argues the plain language of Section 113 prohibits printing the brand identity in the form of the first digit of the credit card number, even if doing so reveals nothing more than what already appears in words on the face of the receipt.

## I. Principles of Statutory Construction

As in any case of statutory construction, the ultimate touchstone is Congressional intent. *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 665-66 (2007); *see also Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992). The best evidence of Congressional intent is the words of the statute as written by Congress. *Nat'l Ass'n of Home Builders*, 551 U.S. 644 at 665-66. But in analyzing the words of a statute, the Court does not look at each word, each sentence, or even each subsection of the statute in total isolation. *See id.*; *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340-41 (1997). Rather, the Court considers the statute as a whole, *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991), keeping in mind that all language is "inherently contextual." *Moskal v. United States*, 498 U.S. 103, 107-08 (1990); *accord Smith v. United States*, 508 U.S. 223, 242 (1993) (Scalia, J. dissenting) (noting that common words are "inordinately sensitive to context"). In other words, the Court always looks first to the plain text of the provision in question, but "[l]anguage, as

compared to mathematics, is inherently imprecise." *Olden v. LaFarge Corp.*, 383 F.3d 495, 504-05 (6th Cir. 2004). Scant few words or phrases have one and only one meaning in all climates. As Justice Holmes once stated, "A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used." *Towne v. Eisner*, 245 U.S. 418, 425 (1918).

The inherent malleability of language does not mean that all federal statutes are by definition "ambiguous," thus permitting or requiring resort to extrinsic evidence of legislative intent. It means only that context and all other information intrinsic to the statute itself is critical because "[t]he meaning of statutory language, plain or not, depends on context." *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991); *accord Robinson*, 519 U.S. at 340-41. The naked text of a statutory provision is the beginning of the Court's plain language analysis, but rarely is it an end in and of itself. *See Food and Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000) ("The meaning–or ambiguity–of certain words or phrases may only become evident when placed in context."). "Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." *Dolan v. United States Postal Serv.*, 546 U.S. 481, 486 (2006).

The Supreme Court repeatedly has indicated that a reviewing court should not consider extrinsic evidence like legislative history unless the statute is ambiguous. *See*, *e.g.*, *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 567 (2005). The statutory text, including the Congressional statement of purpose and other statutory provisions within the same regulatory scheme, are not extrinsic to the statute. *See* 2A Norman J. Singer, SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION, § 47 (7th ed. 2008). These intrinsic indications of Congressional intent

give contextual meaning to "the skin of a living thought" embodied in the actual words Congress enacted. *Towne,* 245 U.S. 418 at 425; *see also Medtronic, Inc. v. Lohr*, 518 U.S. 470, 486-87 (1996) (consulting an act's preamble in construing the scope of the act's preemption clause); *Dean v. Byerley*, 354 F.3d 540, 548 (6th Cir. 2004) (consulting the title, preamble, and other provisions of a statute to interpret a specific provision). The Court may resort to external indications of Congressional intent, such as legislative history, only when the language and intrinsic evidence fails to reveal such intent. In this case, Congressional intent is perfectly clear after careful analysis of the language, grammar, context, and other evidence intrinsic to the legislation. Thus, resort to legislative history is unnecessary.

## II. Construction of Section 113

Statutory construction begins with the language of the statute. Section 113 states:

> Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.

*Id.*; 15 U.S.C. § 1681c(g)(1). Section 113 is not a model of grammatical clarity. The subject ("no person") and verb ("shall print") are clear enough. But the critical direct object of the sentence–the part of the sentence that answers the question of what "no person . . . shall print . . ."–is unclear. There are at least two possible grammatical constructions of Section 113 hinging on the function of the word "more."

The first possible construction, from a grammatical point of view, would treat the word "more" as a noun.[5] This would make "more" the direct object of the sentence–the answer to the

---

[5] The word "more" can be used as a noun, adjective, or adverb. MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 807 (11th ed. 2006).

question of what "no person . . . shall print." The prepositional phrase following the word "more"–which reads: "than[6] the last 5 digits of the card or the expiration date"–would modify and limit the direct object. This construction accounts for each word in the sentence and conforms to acceptable rules of grammar. However, this construction would have the seemingly bizarre effect of permitting merchants to print on the receipt only the last five digits of the card number and the expiration date of the card. Literally everything else would be "more," and therefore unacceptable. This would certainly include the first digit of the card number, but it also would include the brand name of the credit card in word form. Moreover, it would also prohibit printing the very information necessary to make the receipt useful, including a description of the item purchased, the amount of the purchase, location of the transaction, the name of the merchant, and even a signature line for the customer. In other words, this grammatically possible construction would make it impossible to print the information necessary to allow the receipt to serve its purpose.

The absurdity of this grammatically legitimate reading of Section 113 highlights the importance of putting words into context when interpreting federal regulatory schemes. Congress could not possibly have intended one section of FACTA to vitiate all receipts for those who make credit card purchases, yet that is precisely what a literal reading of Section 113 might compel if the Court ignored intrinsic interpretative aids, including the context and purpose of the Fair and Accurate Credit Transactions Act. The words of the statute, when divorced from all other considerations, certainly could support the Court's proposed literal reading. *Cf. Olden v. LaFarge Corp.*, 383 F.3d 495, 505-06 (6th Cir. 2004) ("If we really wanted, it is likely that we could find just about any statute

---

[6] The word "than" can be used as a preposition or a conjunction. MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1293 (11th ed. 2006).

to be ambiguous."). But words or phrases that appear plain enough in the abstract can work absurd results if read out of context. *Public Citizen v. Dept. of Justice*, 491 U.S. 440, 454 (1989). ("Frequently words of general meaning are used in a statute, words broad enough to include an act in question, and yet a consideration of the whole legislation, or of the circumstances surrounding its enactment, or of the absurd results which follow from giving such broad meaning to the words, makes it unreasonable to believe that the legislator intended to include the particular act."). Neither party has advocated reading Section 113 in this way, even though such a reading would impose liability for the receipt printed for Plaintiff in this case. The Court also does not believe this reading of the statute would effect Congressional intent. However, the possibility of reading the statute in this way reveals the need for intrinsic interpretative guidance to understand the Congressional intent.

The second grammatically possible way to construe Section 113 is to treat the word "more" as an adjective. All adjectives, of course, modify nouns. The question then, is what noun "more" modifies in the clause: "no person . . . shall print more [of what?] than the last five digits of the card number or the expiration date." The statute prohibits printing "more" of something other than the specified items, but it does not explicitly say under this construction what information is subject to its prohibition. Under Plaintiff's proposed reading, the missing term to be implied is "card number digits": "no person . . . shall print more [card number digits] than the last 5 digits of the card number or the expiration date." Defendants argue the missing term to be implied is "personally identifying information": "no person . . . shall print more [personally identifying information] than the last five digits of the card number or the expiration date." The question is whether the intrinsic evidence of the statutory scheme itself provides the necessary basis to discern the actual Congressional intent.

9

The Court believes that the intrinsic evidence is sufficient to demonstrate that Defendants' proposed construction is the one that comports with actual Congressional intent.

The first piece of intrinsic evidence supporting Defendants' proposed construction is the syntax of the sentence itself. Plaintiff's proposed implication of the term "card number digits" accounts for only one of the two objects of the prepositional phrase that follows: namely, "the last 5 digits of the card number." But what about the other object of the phrase: "or the expiration date"? It does not make sense to say: "no person . . . shall print more [card number digits] than . . . the expiration date." And yet implying the term "card number digits," and then applying the ordinary rules of grammar, would require this reading. Defendants' proposed use of the term "personal identifying information" accounts for both objects of the prepositional phrase: "no person . . . shall print more [personally identifying information] than the last 5 digits of the card number or the expiration date." Thus, the structure of the sentence strongly supports Defendants' proposed construction.

Congress' own statement of the purpose of FACTA provides more intrinsic evidence supporting Defendants' construction. The truncation requirement in Section 113 was intended to "prevent identity theft." Pub. Law. No. 108-159, 117 Stat. 1952, 1959-60 (2003). Identity theft means "a fraud committed using the identifying information of another person." *Id.* at 1954. The truncation requirement in Section 113 furthers this purpose by "prevent[ing] criminals from obtaining access to consumers' private financial and credit information." Pub. Law. No. 110-241, 122 Stat. 1565, 1566 (2008). Plaintiff's proposed construction is inconsistent with Congress' own statement of purpose because it would prohibit more than what is necessary to protect such private information. Not all digits of the card number constitute "private financial information." The first

digit of any card number–the only digit at issue here–is simply a numeric representation of the brand name of the card. All parties agree that this information is already lawfully on the receipt in word form.[7] (Defs.' Br. in Supp., docket # 61, Exhibit B, McCarthy Decl. at ¶ 11; *id.*, Exhibit C, Dailey Aff. at ¶¶ 7.) Consequently, a potential thief already has all the information revealed by the first digit of the credit card number. Indeed, once the receipt reveals the brand name, "MasterCard," the potential thief knows the first digit is "5." (McCarthy Decl. at ¶ 7; Dailey Aff. at ¶¶ 6-7.)

Plaintiff's construction of Section 113 is not only inconsistent with Congressional intent, it is actually contrary to Congress' statement of intent because it would permit merchants to print truly sensitive information without penalty. Plaintiff's construction would prohibit printing any of the first eleven digits of a sixteen digit card number, but it would not prohibit printing identity-sensitive information like the three-digit card verification code found on the reverse side of a credit card, or, in the case of a debit card, the cardholder's personal identification number. Such information is not part of the credit card number itself, or part of the expiration date, and so Plaintiff's construction would permit the printing of this information. However, this information obviously is "private financial and credit information" that Congress intended to protect from falling into a thief's hands.

Defendants' proposed construction of Section 113 avoids both the over-inclusive and under-inclusive problems of Plaintiff's proposed construction, and it comports with Congress' own statement of intention. It permits the printing of the numerical equivalent of the brand name of the card, which does nothing to increase the actual risk of identity theft. But it also prohibits the printing

---

[7] At least one credit card brand, Visa, appears to require by contract that its merchant partners print the "Visa" name on the face of every receipt. (McCarthy Decl. at ¶¶ 2, 11; *see also* RULES FOR VISA MERCHANTS, CARD ACCEPTANCE AND CHARGEBACK MANAGEMENT GUIDELINES (2007), www.usa.visa.com/download/merchants/rules_for_visa_merchants.pdf)

of any truly sensitive information, regardless of whether such information is part of the credit card number or expiration date. In so doing, Defendants' construction "prevents criminals from obtaining access to consumers' private financial and credit information." Pub. Law. No. 110-241, 122 Stat. 1565, 1566 (2008).

Other provisions within FACTA, as well as the broader regulatory scheme of which it is a part, provide further intrinsic support for Defendants' reading of Section 113. FACTA addresses all aspects of the identity theft problem by, *inter alia*, establishing procedures to alert consumers about fraud and identity theft issues, providing greater access to consumer credit reports, and establishing certain rights for identity theft victims. *See*, *e.g.*, 15 U.S.C. §§ 1681c-1, 1681g, 1681m. Truncation of credit card numbers is but one of many FACTA provisions designed to address these issues. Reading the statute as a whole, the importance of protecting consumers from exposure to actual, legitimate risks of identity theft becomes even more pronounced. *Cf. Robinson v. Shell Oil Co.*, 519 U.S. 337, 340-41 (1997) (stating that the court must consider the language of the statute but also the "the specific context in which that language is used, and the broader context of the statute as a whole"); *cf. also Dolan v. United States Postal Serv.*, 546 U.S. 481, 486 (2006) (stating that the court should "consider[] the purpose and context of the statute"). Congress is not interested in specifying the content of a credit card receipt as part of some abstract, academic exercise. Rather, Congress is interested in preventing the actual harm of real identity theft. Once again, Plaintiff's proposed construction fails to take account of this statutory context. Instead, Plaintiff's construction would impose liability on a merchant who printed both the brand name of the card and the associated brand numeral reflected in the first digit of the card number, even though such a receipt would in no way reveal additional or private information, or increase the actual risk of identity theft.

Congress' concern with actual, legitimate risks of identity theft, rather than the particular form of disclosing information already lawfully on the credit card receipt, is also reflected by the Credit and Debit Receipt Clarification Act of 2007 ("RCA"), which directly addresses certain aspects of Section 113. *See* Pub. Law. No. 110-241, 122 Stat. 1565, 1566 (2008). Almost immediately after FACTA went into effect, "hundreds of lawsuits" were filed alleging that a merchant's failure to remove the credit card expiration date from a receipt was a willful violation of Section 113, even if the credit card number was truncated. *Id.* If a consumer could establish a willful violation of Section 113, he or she would be entitled to statutory damages without having to prove any actual harm in the form of identity theft or other damage to credit history. *See* 15 U.S.C. § 1681n. Finding that revealing the expiration date exposed the consumer to little, if any, actual risk of identity theft, Congress stated in the RCA that "the continued appealing and filing of these lawsuits represents a significant burden on the hundreds of companies that have been sued and could well raise prices to consumers without corresponding consumer protection benefit." Pub. Law. No. 110-241, § 2(a)(7). Congress thus amended the wilfulness provision of 15 U.S.C. § 1681n to except merchants who printed an expiration date on a credit card receipt "but otherwise complied with" FACTA. *Id.* at § 3. In doing so, Congress expressly noted: "The purpose of this Act is to ensure that consumers suffering from any *actual harm to their credit or identity* are protected while simultaneously limiting abusive lawsuits that do not protect consumers but only result in increased cost to business and potentially increased prices to consumers." *Id.* at § 2(b) (emphasis added).

The Receipt Clarification Act and FACTA are part of the same comprehensive regulatory scheme. The RCA is strong evidence of a Congressional intent to protect consumers from actual threats of identify theft, and not to create potentially crippling cost and liability for merchants whose

13

conduct does not in any way increase the actual risk of credit fraud or identity theft. *Cf. Robinson*, 519 U.S. at 341 (reading one statutory provision in light of the statute as a whole to ascertain whether a "coherent and consistent" statutory scheme might inform the meaning of a particular provision). Plaintiff's proposed construction is at odds with Congress' own statements of intention. Plaintiff's proposed construction would impose liability on a merchant who did not actually reveal new or private information, and would simultaneously exonerate a merchant who printed genuinely sensitive information–such as the card verification code–that happens not to be part of the credit card number or expiration date. Defendants' construction, in contrast, avoids both of these problems, and actually advances the purpose Congress itself said it was trying to achieve.

The Court finds no need in this case to consult extrinsic evidence to ascertain Congressional intent. All evidence intrinsic to the statute indicates that Congress intended to limit the identity-sensitive information that could appear on a credit card receipt. Based on the undisputed facts in the record, the first digit of a credit card number is not identity sensitive information. Therefore, Congress did not intend to prohibit printing the first digit of the credit card number on a receipt that all parties agree may lawfully include the same information in word form.

## CONCLUSION

Plaintiff seeks to represent a nationwide class of all persons who received a receipt from Defendants revealing the first digit of a credit card number. Under Plaintiff's construction of the Fair and Accurate Credit Transactions Act, he and every member of the putative class may be entitled to $100 to $1000 in statutory damages even though they have suffered no actual harm, and Defendants did not in any way expose the class members to an increased risk of identity theft or credit fraud. The potential liability under Plaintiff's construction of the statute could reach multiple

millions of dollars. Yet even Plaintiff concedes that there would be no liability at all if he had received the same receipt with the first digit of his credit card number masked. That receipt would have revealed the exact same brand information, so that any potential thief would know the very information Plaintiff argues Defendants should have concealed: namely, that the first digit of his MasterCard was "5." All the intrinsic evidence–the language and syntax of the statute; the context of the statutory text; and Congress' own statement of its purpose in enacting FACTA–demonstrate that Congress did not intend such an incongruous result. To the contrary, the intrinsic evidence indicates Congress meant to limit the personal identifying information that could be printed on a credit card receipt, but not to regulate receipt content of innocuous, non-identifying information, such as the brand name or associated brand number of the credit card. Consequently, Defendants are entitled to summary judgment in their favor on Plaintiff's FACTA claim.


Dated:   September 1, 2009              /s/ Robert J. Jonker
                                        ROBERT J. JONKER
                                        UNITED STATES DISTRICT JUDGE